Your Honor, the final case of the morning, Clause 212 of the E-2, Keaton State of Illinois v. Frank J. Westmoreland, Jr. On behalf of the Avalanche, Ms. Kathleen Merrill. On behalf of the people, Mr. Randy Sumner. For those of you who were here earlier, you will note that Justice Hudson is no longer with us. He did have a circumstance that he had to attend to at this time. He will be reviewing the oral argument. He has provided some questions to both Justice Shostak and myself that he would like generally addressed. And we will do our best to accomplish that. And we will then obviously have conference with him when he is available for that purpose. So if you are ready, Ms. Hamill, you may proceed. I'm ready. Good afternoon, Your Honor. Good afternoon. I'm representing Frank Westmoreland, Jr., the defendant appellant. After a bench trial, Mr. Westmoreland was convicted of multiple offenses that were based on evidence that on two separate occasions he had struck his girlfriend's four-year-old son with a belt. The judge ultimately sentenced him on two of the convictions. Armed violence predicated on domestic battery committed on January 17th, 2011, and aggravated battery of a child committed on January 31st. All the other convictions were merged into one or the other of those two. Unless Your Honor has any questions. How is a belt a Category 3 weapon? I am arguing that it is not a Category 3 weapon. I've got a couple of reasons why. The statutory definition for a Category 3 weapon is a bludgeon, blackjack, slung shot, sandbag, sand club, metal knuckles, billy, or other dangerous weapon of like character. In People v. View, this court found that a metal flashlight that was actually used to strike somebody was not of sufficient like character to the objects that are listed in the definition to be a Category 3 weapon. The court relied on People v. Davis, the Illinois Supreme Court case, which applied the statutory construction tools of a juice done or something generous and the last antecedent rule. Both of which kind of mean the same thing, which is when you have a list of things, you look at the kind of things that are in the list to tell whether in other things of the like nature of the things that are in the list. And the last antecedent rule actually says you look at the thing that immediately precedes the catch-all phrase. If they're of like character. Of like character, yes. You don't have, and nowhere do we have a definition for bludgeon in the statute, do we? Right, we don't. So it's just, you know, of the character of a bludgeon, but what this court observed in View, which I think is very important, is that the statute doesn't say or other object which physically resembles a dangerous weapon. It says or other dangerous weapon of like character. And this court interprets that as meaning the statute applies, the definition applies to objects which are inherently dangerous weapons. Its primary purpose is that of a weapon. And using that definition found that a metal flashlight did not fall in the category, was not of that like character. Despite the fact that a metal, I know that police officers carry a certain kind of a flashlight which is actually, can be used as a defensive weapon. But the court said the primary purpose of a flashlight is not to be used as a weapon, regardless of whether or not it could be. And so it is not inherently a dangerous weapon. Well, a belt is even less like a bludgeon or any of the other things listed than is a metal flashlight. Both physically, because it's not shaped like that. It's not stiff or anything. It's not weighted, deliberately weighted for weaponry purposes. And also because it has, its primary purpose is that of a clothing accessory rather than a weapon. Is there any other statutory authority that the use of this belt could have fallen under generally rather than categorize it for purposes of an armed violence? Yes, yes. We can see in fact this court, or this case actually shows that the conduct of striking a small child with a belt is criminal conduct regardless of whether it is armed violence. It is, in this case, convictions for domestic battery and also for aggravated battery of a child as charged as class 3 offense were entered. And for that reason if this court grants us relief on this claim, we would ask that, we realize we can't ask to have the final judgment of conviction be entered on the class 3 ag bed of a child and that he be re-sentenced. Would that require re-sentencing? Yes. Let me ask you this question. One of the issues that you raised was whether the defendant's armed violence conviction should be vacated because the predicate of felony was a misdemeanor that was on the case. If we find that the is not a category 3 weapon, do we need to get to your issue of enhancement, improper enhancement? Oh, I don't believe so. I think that if we find that it's not a category 3 weapon, then it seems like the elements of the offense were not addressed and so that would be the first decision that you would reach. And the second would be, if it is a category 3 weapon, then is this predicate felony improperly enhanced? Do you want to give us a nutshell of that argument? It's a little complicated. I'd like to go to the heart of my argument, which is first of all, as I've explained in my briefs, we don't look at the language any felony as being absolutely meaning every single felony that isn't listed in the statutory exceptions. Our Illinois Supreme Court has found exceptions to it that are not listed in the past. It found that voluntary and involuntary manslaughter were not proper predicates because they are not premeditated offenses and the purpose of the armed violence statute is to deter premeditated, or to deter people from using weapons while they commit felonies. And so if an offense is not premeditated, it cannot be deterred. They also found, for another reason, that a misdemeanor that has been enhanced to a felony by the presence of a weapon cannot be enhanced again by the presence of the same weapon to armed violence and people be hearing. And there they were looking not at the purpose of the statute, but at the prohibition against double enhancement from sentencing. I think for our case, our exception that's recognized by the Illinois Supreme Court is the one that was recognized in People v. Lucas. And in that case, Lucas was actually convicted of armed violence, as was my client, based on a misdemeanor that had been enhanced to a felony by a prior conviction. Driving a license revoked. Yeah, driving a license revoked and all that. Although the defense presented framed the question both as reasonable doubt whether the state could prove the prior conviction and whether a misdemeanor enhanced to a felony could ever be a predicate, the court resolved the case, and this actually is probably instructive on the question you just asked about the belt versus this argument, on the basis of the reasonable doubt. The court found that the state failed to prove the underlying DWLR that was responsible for the DWLR at hand being enhanced to a felony. The reason the state didn't prove it was because it prohibited from doing so under our form of the charge statute 111-3C, which while requiring the defense to give notice of any prior or requiring the state to give notice of any prior conviction that's going to be used to seek enhanced sentencing, also bars the state from proving the fact of the prior conviction at the defendant's trial, unless such proof is otherwise permitted by issues probably raised during the trial as the language. But what Lucas did is the court recognized that there was a conflict between the violence statute and that provision of 111- 3C, and resulted by finding that 111-3C basically prevented the state from proving the predicate felony. How about your ineffective assistance of counsel? Was it really ineffective assistance if the mother was either at work or she wasn't at the home? Oh, on that one, well, our big problem with what the court did in that case is the court looked at, was simply assessing whether or not prejudice occurred, because it was undeniable that a professional, that a mistake was made by defense counsel. He admitted that he overlooked the materials that he had available for impeachment, and the court said, well, as long as she wasn't home, that's what the witnesses said, so that's not a problem. Well, the thing is, the court failed to take into account that not only did it impeach the mother a little, it also impeached the daughter. The daughter's testimony was basically, provided the entire evidentiary basis for the conviction for the January 17th offense. If her allegation that the mother was at work, it was proven to be untrue, then that would increase her credibility. I mean, decrease her credibility. The evidence didn't indicate that mom said she was at work or I called mom at work, she just said mom was at work. They didn't have any conversation that established that, and there was no information in the record that established that, correct? That's true. That is true. Mom's not in the house. But there is another thing that this impacted, and that is the defendant's credibility, because the defendant maintained in his testimony that the mother was at home that day, that she didn't work on Mondays. And so this impeachment of the mother would have also bolstered the defendant's credibility. And he's the only one, and his testimony regarding January 17th was that never happened, nothing happened that day. So you would submit that you would have met the Strickland standard that if that testimony would have come out that it's likely he would have been acquitted. That's, yeah, we're saying the court did not consider whether or not her view of the defendant's testimony would have been altered by that. So there was no other evidence other than that girl's testimony. Well, there was, the state, there was some murky testimony by the 4-year-old boy. But as I explained in the brief, it's not clear. When asked, did something happen to you on that day, he said his finger got squished. And then the state said to him, well, did he hit you with this belt on that day, kind of presuming a fact not in evidence. And he said he did, but he said four times, which is precisely what he said about what happened on the 31st. And so there's a possibility that he was confused. It was the little girl's testimony that she sat there and watched this happen. That is the conviction. I question whether we would have a conviction on the January 17th crimes had the little girl not testified at all. Did the little boy say that mom was around or that he went to tell mom, or was there anything about mom? I'm pretty sure the little boy said his mother was not home. So there's more than just the girl saying that she's at work. There was some reference. And then your client saying well, she didn't work on Mondays, which may in fact have been true, but that doesn't necessarily mean she wasn't home. Correct? He said she was, but it doesn't necessarily mean she wasn't. Right. Yeah. But it's still with her maintaining that she was at work and then establishing that she wasn't, it definitely shows that she was lying a little bit at least. And so it was kind of a stack of cards. If you're willing, if you argued or you at least said it's possible that the mother was confused that she was at work. Yes. As opposed to a willful lie. It is. Or it's possible the defendant was confused. It is. All these are possibilities. That is true. The issue though is you're submitting that you feel that you met the Strickland standards with respect to effective assistance. That's right. So I believe I've covered pretty much everything I want to say other than to discuss Lucas a little farther. I don't think that's necessary. Okay. Thank you. In case we ask alternatively that the defendant be given a new trial on the counts that relate to the events of January 17th or that his convictions from that are just, are biospecific and that they be vacated and that he be resentenced for ag, bed of a child, class 3 felony. Thank you. Counsel. Good afternoon, Your Honors. Good afternoon, Counsel. May it please the court. My name is Rainer Seneca and I'll be arguing on behalf of the people in this matter. Mr. Seneca, why don't you start right where I asked the first question, your opponent. How is about a category three weapon? This case presents an opportunity to this court to revisit its opinion and view which discussed category three weapons and the people submit was wrongly decided. As counsel pointed out, the definition of category three weapons is a bludgeon, blackjack, slingshot, sandbag, sand club, metal knuckles, Billy or other dangerous weapon of light character. I mean, we don't, I think we're all agreeing based upon even what Ms. Hamill said that a belt's a dangerous weapon or can be. But now the most important part of that is of light character. Precisely, Your Honor. The statute obviously contemplates that things that aren't listed will suffice. And so you have to look at the things that are listed. Bludgeon, that was defined in people review. There's no definition in the statute as counsel mentioned, but the definition was recounted from a dictionary in view and it's basically a stick that's weighted at one end. Blackjack, similar. Slingshot, not similar. A slingshot's a tool. It's a maritime tool with a weight at one end tied to a rope that sailors used to pass lines about a boat. They tie the line to the slingshot and they sling the slingshot across the boat. Well, it wouldn't go across the boat unless it was weighted. Right. So it's weighted at one end. The fact I'm trying to make or the point I'm trying to make here is it's not like a blackjack. It's not something designed to be a weapon. It's designed to be a tool and it can be used as a weapon. Sandbag, we know what sandbags are. Sandbags are bags filled with sand used as ballast perhaps in a boat or to shore up land so it's not flooded during a hurricane, what have you. It's a tool. It's nothing like a blackjack. It's nothing like a bludgeon. Going a little further, metal knuckles. We've seen brass, well, maybe I assume we've all seen brass knuckles. I do watch movies sometimes. Right. So that's nothing like a bludgeon either. So these items are inherently similar. But they are at least the ones I've had the occasion to see, they do have there are certain things on those knuckles other than just brass. They have a punch so to speak because of the weighting here. If you got hit on this end it would hurt too but this end hurts more. Exactly. So the common characteristic among this list of items is they all accentuate someone's ability to cause blunt force trauma. That's the common characteristic. And that's what the statute means when it says other dangerous weapons of light character. Items that accentuate one's blunt force trauma. So does it make any, maybe the issue then here isn't so much the belt but which end of the belt is used? And how it's used. For instance, the belt which I had supplemented the record, it's in evidence. You all have access to it. It can be wrapped around someone's hand and punched just like brass knuckles. There would be no difference there. Is that what you kind of did with the belt? The evidence as counsel mentioned came from the victim and the victim's sister primarily and the victim said that he whipped her hand. I think he used beat, beat me with it and I believe the victim's sister said the same thing. They were asking about it a couple different times. So the way, the bottom line is the statute obviously contemplates other items falling into this category and reading how it's used out of this definition does violence to the purpose to the statute. The purpose of the statute is to deter criminals when they're committing felonies from using dangerous weapons because we don't want people to get hurt. Is the legislature unconcerned with people using baseball bats when they commit felonies or tire tools or any other thing that's not listed here? The answer is obviously no. They don't want someone committing a felony holding a blackjack or a baseball bat. Are you saying that any belt is a category 3 or this particular belt because of its character, its belt buckle, the way it was used is a dangerous weapon? Your Honor, we're advocating a fact specific inquiry based on how it's used. The facts of view are a great example. It was a map writing view, a heavy long flashlight and it was used. It did severe damage to the victim. It broke his eye orbit. But this court in rendering this opinion that the flashlight was not a category 3 weapon basically engrafted language onto the statute and said if the item has a legitimate purpose, it can't be a weapon. It has to be a weapon in the first place. The statute doesn't say that. It doesn't say unless the item has a legitimate purpose. But if it is listed and the two that you have trouble with, the listings, being the sandbag and the nautical tool, if they list them as a category 3, we can't unlist them even though they have another primary purpose. Exactly. These are per se dangerous. These are always going to be dangerous weapons under the statute. The fact that they're being used otherwise for a good purpose or for a legitimate purpose is not our question there. Right. Well, my point is only that there are items in the list that are tools that can be used as weapons. The way a belt is a tool, but in this case it was used as a weapon and therefore it's similar to these other items in the list and therefore it satisfies the definition. Wasn't VIEW based on reasoning from the Supreme Court in Davis? It was, Your Honor. Are you going to ask us to depart from Davis as well or how do you distinguish VIEW from Davis? In Davis it was a BB gun and the victim was shot in the eye with the BB gun. So the BB gun was not used as a bludgeon. And the Davis Court analyzed it under category 1 for firearms and said it's not a firearm because the definition of firearm in another part of the criminal code exempts items that are propelled by CO2 like BB guns. So it's not a firearm and says it's also not a bludgeon, but in that case it wasn't used as a bludgeon. We would submit that if the person took the BB gun and beat the victim with it, it would be a category 3 weapon. So it's a fact specific inquiry, like I said, we're advocating for based on what happens. And that's not a rare occurrence in law. You often have application of law that's very fact specific. Well, if something, though, again, we're back to if something is specifically excluded by another statutory section, what right do we have to include it because of the way it was used? It's not excluded. Nothing is excluded from here. I'm not talking about a belt. I'm talking about the if it was excluded by another statutory section, how can we then throw it back someplace where we think it fits like a bludgeon? I apologize, Your Honor. I misunderstood your question. The answer to that is it's not a firearm. So you're not going to get a class X conviction if you shoot someone with a BB gun. My son will be happy. But for a class 3, I'm sorry, a category 3 class 2 conviction, we would submit that you can get such conviction if you use the BB gun as a bludgeon. So then going back to your earlier explanation, you said if you wrap the belt around your hand and punch somebody with it, it can certainly be used as a dangerous weapon. And that would be remarkably similar to metal knuckles. So did we have that in this case? I don't know, Your Honor, is the answer. We have that he beat the victim with the belt. I don't know if he beat it by wrapping it around his hand or not. And we have to remember the procedural posture in this case. We're not in a position where charges were dismissed. We're in a position where we're seeking affirmance of a conviction. So you have to indulge all the inference from the records in favor of the prosecution. Right. But there was testimony on how the child was struck, correct? Yes. And was the testimony that the child was punched with? No, it was beat. And I would say that I could contemplate that scenario. So what you're saying is that in some circumstances, a belt may be a Category 3 weapon, but not in all circumstances should it not be a Category 3 weapon. Yes, Your Honor, and maybe I might not be doing a very good job here. Even if he took the belt and whipped the defendant with it, our position still would be it's a Category 3 weapon because it's using to accentuate the defendant's ability to cause blunt force trauma. You can see the pictures of this 4-year-old in the record. He was severely injured by this man. And he was severely injured with this belt. So by reading how the item is used out of the definition, Your Honor, our basic position is that subverts the policy behind the statute of protecting victims. Again, under review, a defendant can walk into a home and beat someone with a baseball bat and not be guilty of armed violence because a baseball bat has a legitimate purpose. Well, I think the child, I thought there was some reference to the fact that the child knew what it was to punch, but one of the children said whacking, which would be, if they're saying if he punches this, whacking might be something different. Right. The testimony you're referring to, Your Honor, is on the incident of January 17th, the little girl said the defendant and the victim were playing a game where the defendant would punch the victim and knock him down and the victim would get up and the defendant would punch him again. That's the testimony to which you're referring. So clearly this is a violent man. He might have easily, when he really meant to discipline this child, wrapped the belt around his hand and administered this beating. But don't we need to have testimony and evidence of that before we can assume that that's the way he utilized this belt? Yes, Your Honor, and again, I don't want to obfuscate my point. Even if he whipped him with it, which we know he hit him with this belt, whether it was wrapped around his hand or he whipped him, we know that happened. He struck this child with the belt. So either way, it's a Category 3 weapon is our position. So then you're saying that the injuries that arise out of the use of this belt will cause it to be a Category 3 weapon. In other words, if the injuries weren't so substantial, maybe the belt wouldn't be a Category 3 weapon. That would be proof that it's not of like character to these other weapons, which could cause serious injury. But the degree of harm, this is all fact-specific questions that should be left to the trier of fact. And that's another point I want to make sure I don't forget regarding the last issue, the impeachment issue. Remember, this is a bench trial. And we had the ineffective assistance hearing after the guilty verdict. And the trier of fact, the judge in this case, was able to say, I know what you're saying, that the mother wasn't impeached with this time trial record. I understand. Had she been impeached, my decision would have been precisely the same. So this is not a position wherein having to try to crawl into the mind of the jury to see if there's prejudice. We know unequivocally there's no prejudice here. So any strickling challenge falls on its face based on the second problem. And last question, and I can't do it as well as Justice McClaren does, because I can't remember the Latin phrase, but he is often on this bench saying, if it's not in there, it's not in there. And there's a Latin phrase for that. Belts are not in there. So why should we put them in there? Well, because it is in there, Your Honor, and it's other dangerous weapon of like character. The statute contemplates items other than the per se ones listed to be included. But it put two tools in your particular definition in. It could have put the belt in just as easily. Exactly, Your Honor. That's exactly my point. Under view, we say it has to be a weapon. We know from the per se ones that's not true. There are two in here that are. But they're calling them weapons by their inclusion, and they are not including a belt, even if that belt has I love Texas and the belt buckle is this big. They're not being that specific. Right. And it would be absurd for them to list the thousands of things that could be used as weapons in this case. They can't do that. That's why they're left with phrases like other dangerous weapon of like character. My point on the items that aren't necessarily weapons is view completely contradicts the language of the statute. View says it has to be a weapon. We know from the language of the statute that is not true. These other two items are tools that are used as weapons in the same way a baseball bat or a tire iron or a metal studded belt like the weapon in this case was used. I'm going to ask again, because I don't know if I got this. Is the degree of harm relevant to whether or not it's a Category 3 weapon? That the victim was harmed, I think, is the only question that's relevant. Do you want to address the second point? I think I said everything I wanted to say about it being a bench trial, but perhaps, Your Honor, I could mention the predicate offense issue. Do we need to get to that if we find that this is not, in fact, a Category 3 weapon? No, Your Honor. I believe the counsel represented that correctly. If I could just sum it up very quickly. If we don't do that, give us your take. The statute says any felony except for the 10 enumerated can serve as a predicate felony for armed violence. It lists 10 that cannot be. Voluntary manslaughter, which is an out-of-secondary murder, and involuntary manslaughter are listed. Therefore, aleos and freneti, upon which counsel relies, are of no use to her because the statute's already been addressed to contemplate those two decisions. Was it changed, though, after the decision? It was. So there's a reason. Yes. The case counsel primarily relies on is People v. Lucas. Her argument today couldn't more prove my point than I can. The court was presented with the opportunity to say a felony, which is only a felony because the defendant's criminal history would otherwise be a misdemeanor, cannot serve as a predicate felony for armed violence. The court was asked to make that decision, the Supreme Court. They said, no, we're not going to do that. We are going to base our decision on reasonable doubt. And because this particular felony was not proven at defendant's trial, that being TWLR subsequent offense, was not proven at defendant's trial, he wasn't proven guilty of armed violence because armed violence requires it to be a felony. And he was only proven guilty of the misdemeanor. But isn't there inherently in this situation, and situations of like character, where you are doing a double enhancement? First you're setting up the felony based upon the misdemeanor and a prior misdemeanor, and then you're going that next step and sentencing even more significantly if the armed violence is found. And why isn't that in violation of due process in the Constitution? Well, if you're talking about double enhancement, that situation as counsel said was addressed in Heron. That's where the weapon made it a felony, and then you're enhancing again for purposes of armed violence based on the presence of the weapon. Right. So this is not a case of a double enhancement. This is a case of where the legislature is determining that recidivist criminals who commit crimes are more culpable than other ones, and therefore they are subject to greater sentences and greater crimes. So if you've done something like this similar before, you're more of a danger to the public, and therefore you are guilty of a felony. But then shouldn't we also consider the fact, especially with the driving while license revoked and driving while under the influence of alcohol, that the legislature has made lots of mistakes that this Court's caught and the Supreme Court has caught in enhancement. So why would we be enhancing to a class 3, a class 4, a class 5, where even their statutory authority has been out of sync? The counsel doesn't levy any kind of constitutional argument here. She's arguing whether or not the credit offense can be an enhanced misdemeanor. There's no constitutional dimension to her statute. So you don't have to concern yourself with that line of inquiry. Well, maybe I'm concerned that the legislature has made significant mistakes that we've caught, and why shouldn't I look to see if they've made a mistake here? Well, let me flip something you said to me on its head regarding the Category 3 weapons. There's a list of items here that are Category 3 weapons. We can't assume that the Court intended to include other ones. In the armed violence statute, there's a list of felonies that are exempted from being predicate felonies for armed violence. An enhanced misdemeanor is not one of them. But some of them came as a result of mistakes that were determined and then adopted into the statutory authority. If that were the case, Your Honor, in Lucas, that's what the Supreme Court would have said. They would have said, look, you can't enhance a misdemeanor to a felony and have that serve as a basis for armed violence. They were asked to decide that. But we're being recorded here, counsel, and sometimes the Supreme Court doesn't do what they're asked to do because they're the Supreme Court. Well, that may or may not be true, but there still are. What, you don't like my verdict? I think I've made all the points I intended to make, Your Honor. Unless there's any other questions? I don't have any. Thank you. Regarding counsel's point that the list of origin, blackjack, etc. includes what he says are tools, I don't know if it's the, I guess it would be perhaps the last precedent or first precedent rule or something, a kind of a corollary of the last antecedent. It seems to me that when they outlist the slung shot, which I have to go on Wikipedia to discover, and it does mention its weapon function, I really do not know what the legislature is referring to by a sandbag. These things sound very old to me. This sounds to me like something that's probably been in a definition of weapons from time out of mind in the state of Illinois. These things are listed in a list which ends with or other dangerous weapon of like character. So clearly they are referring to the weapon use of these things. And perhaps it is more common than the practical use. I don't know. But they included it in the statute and as Justice Hutchinson said, they did not include a belt. Are you submitting that a belt can never be used as a Category 3 weapon? I am. I am. And do you agree or disagree that the amount of harm should be considered in determining whether something is a Category 3 weapon? It should not. We need to look at the character of the weapon. The purpose of the statute is to deter people from using weapons when they commit felonies. And actually that brings me to the other point that I wanted to make. And that is we should not invite abuse of the armed violence statute by stretching the definition of Category 3 weapon to include whatever object in this case a frustrated or dysfunctional parent or child caretaker lays their hands on when they decide to do something untoward to a child. In fact, to do so would actually thwart the deterrent purpose of the armed violence statute. And that is because if you can't tell it's a Category 3 weapon until after it is used, you aren't going to be deterred from using it by our statute. If an object is an inherently dangerous weapon, then yes, then you will be deterred. But if it is anything that can be used to hit someone, then there's going to be many an unpremeditated use of a weapon and that is not what the statute was meant to address. What is the significance with this record in the difference between punching, hitting, which was a term that was used by the witnesses, and whacking? I mean, does that tell us anything about how it was physically used? Not really. I suppose when I hear the word whack, I think of more of a slapping thing than a punching thing. However, it really doesn't matter because if the way something is used would have been relevant to whether or not something was a Category 3 weapon, then this Court would have found that the metal flashlight was a Category 3 weapon in view. And the defendant himself, in a letter that somehow was introduced, said so it's now not legal for whipping a child? Yeah. That also, I mean, if you look at what a bludgeon does versus what a belt might do, is there also a difference between a bludgeon and a whip? Well, I think there is a, you know, have you been a child in the 50s, there was certainly a notion of I'm going to take off my belt or, you know, a strap or whatever. It generally was slap, slap, slap, if that whipping sounds like that to me. And I think that Mr. Westmoreland just hadn't, you know, his mind wasn't going along at the time. So unless you have anything else, I again ask for the relief I requested earlier. Thank you very much. Thank you, Counsel, for your arguments. Thank you all who were here today, and we will take this matter under advisement, issue a decision in due course of course after we consult with Justice Hudson, and we will now stand adjourned. Thank you.